IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

v.                                           CRIMINAL ACTION NO. 2:18-cr-00165-1

DARNELL SMITH

MEMORANDUM OPINION AND ORDER

Pending before the court is Defendant Darnell Smith's Motion to Suppress. [ECF Nos. 83, 123]. The court held a hearing on this Motion on January 30, 2020 and ordered additional briefing. Defendant and the Government have submitted additional briefs, and the matter is now ripe for review. For the following reasons, the Motion is **DENIED**.

I.    Background

On September 12, 2016, Corporal Taylor of the Charleston Police responded to a dispatch that a shooting had taken place at 808 Hendrix Avenue, Charleston, West Virginia and that the shooting victim was being transported to the hospital, Charleston Area Medical Center ("CAMC"). Corporal Taylor arrived shortly before Defendant Darnell Smith. Corporal Taylor waited for him and then followed Defendant into the hospital. Corporal Taylor noticed Defendant had a bloody wound on the side of his head. The treating doctor instructed Defendant to remove his pants, and he refused. Corporal Taylor did not accompany Defendant to the trauma room. A

short time later, a nurse brought Defendant's clothing to Corporal Taylor. Corporal Taylor took the clothes and began to check them. Corporal Taylor checked the pants and felt something in the pockets and heard a plastic-like crumbling noise. He suspected it was drug-related packaging. Corporal Taylor searched the pockets and removed 20 individually wrapped bags of a powdery substance, indicative of drug trafficking and $564 U.S. currency. Corporal Taylor field-tested the substance, and it tested positive for heroin. The West Virginia State Police Lab also later confirmed the bags contained approximately 7 grams of heroin.

On June 1, 2017, Detective Matt Petty with the Metro Drug Unit in Kanawha County, West Virginia executed a search warrant of Defendant's residence located at 808 Hendrix Avenue, Charleston, West Virginia. The affidavit for the search warrant was based primarily on a curb side trash pull at 808 Hendrix Avenue on June 1, 2017. A search of the trash revealed items containing marijuana and heroin residue and other items that indicated drug trafficking activities, such as, plastic sandwich bags with the corners missing and cigar paper commonly used to smoke marijuana. The trash also included mail addressed to the 808 Hendrix Avenue address, though it did not include the names of Darnell Smith or Keanna Carter. Detective Petty further discovered 30 pills of oxycodone in the trash, 29 of which were 30 mg and one 15 mg. The pills were packaged for resale. Detective Petty testified that the trash was outside of Defendant's fence. Detective Petty further detailed in the affidavit information about the September 12, 2016 shooting at the same residence involving Defendant, during which officers located 20 bags of heroin on Defendant.

When Detective Petty and other officers arrived at the residence on June 1, 2017 to conduct the search, Defendant and co-defendant Keeana Carter opened the door for officers to search the residence. For safety reasons, officers placed Defendant in handcuffs. Officers located the following items in the residence: 251 pills of oxycodone, Glock model 26 9mm handgun, DPMS .223 rifle, $4,475 in the bedroom, Smith & Wesson handgun in the attic above the bedroom, and Glock model 17 in the kitchen. Officers also seized $290 from Carter's purse, $147 from Smith's wallet, and $810 from Smith's pockets.

Detective Petty asked Ms. Carter and Defendant if they would like to cooperate with the Metro Drug Unit and, if so, they would not be charged that day. Defendant stated that he would think about it, and he and Ms. Carter took the Detective's business card and said they would contact Detective Petty with their answers. Detective Petty advised them if they did not contact him within a timely manner, he would issue a warrant for their arrest.

At some point, Smith made the statement that he did not know about the suspected pills and suspected heroin, but the guns were his. According to the Government's brief, this occurred while Detective Petty documented the items seized. According to Detective Petty, officers were searching the residence and began discovering firearms within the residence when Defendant made the statements. The Government asserts that Defendant's statements were spontaneous and not in response to any questions.

3

The Grand Jury returned an indictment on August 14, 2018, charging Defendants Smith and Carter with one count of possession with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and one count of possession of firearm in furtherance of drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) related to the June 1, 2017 search. On June 4, 2019, a superseding indictment was returned, adding an additional count for possession with intention to distribute heroin against Defendant Smith related to the September 12, 2016 hospital search. On July 25, 2019, Defendant filed a motion to suppress his statements and the property seized from the search of his residence. Defendant filed a supplemental motion on January 15, 2020, contending that his clothing was unlawfully searched by law enforcement after his admission into CAMC General, and therefore, heroin found in Defendant's clothing should be suppressed.

## II.    Legal Standard

When deciding a motion to suppress, the district court may make findings of fact and conclusions of law. *United States v. Stevenson,* 396 F.3d 538, 541 (4th Cir. 2005). During the hearing, "the credibility of the witness[es] and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." *United States v. McKneely,* 6 F.3d 1447, 1452–53 (10th Cir. 1993); *see also Columbus–Am. Discovery Grp. v. Atl. Mut. Ins. Co.,* 56 F.3d 556, 567 (4th Cir. 1995) ("[I]n the usual case, the factfinder is in a better position to make judgments about the reliability of some forms of evidence than a reviewing body acting solely on the basis of a written

record of that evidence. Evaluation of the credibility of a live witness is the most obvious example.") (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.,* 508 U.S. 602, 623 (1993)).

The burden of proof is on the party who seeks to suppress the evidence. *United States v. Dickerson,* 655 F.2d 559, 561 (4th Cir. 1981). Once the defendant establishes a basis for his motion to suppress, the burden shifts to the Government to prove the admissibility of the challenged evidence by a preponderance of the evidence. *United States v. Matlock,* 415 U.S. 164, 177 n.14 (1974).

III. Discussion

a) The September 12, 2016 hospital search

I will first address the motion to suppress the heroin found in the pants of Defendant while he was at the hospital on September 12, 2016.

The Fourth Amendment "protects against unreasonable searches of persons, houses, papers, and effects." *Yanez-Marquez v. Lynch*, 789 F.3d 434, 464 (4th Cir. 2015). Searches and seizures without a warrant are presumptively unreasonable. *Kentucky v. King*, 563 U.S. 452, 459 (2011). However, an exception to the warrant rule applies under the plain view rule. "For the plain view exception to the warrant rule to apply, the government must show that: (1) the officer was lawfully in a place from which the object could be viewed; (2) the officer had a 'lawful right of access' to the seized items; and (3) the incriminating character of the items was immediately apparent." *United States v. Davis*, 690 F.3d 226, 233 (4th Cir. 2012).

In *Davis*, the defendant arrived at the hospital with a gunshot wound to his leg, claiming to be a robbery victim shot by the robber. *Id.* at 230. The responding police officer saw the defendant's gunshot wound and secured the defendant's pants and boxer shorts as evidence of the reported shooting, without the express permission of the defendant and without a warrant. *Id.* In that case, the Fourth Circuit held that "the plain view doctrine justified both the warrantless seizure and the subsequent search of the bag containing [the defendant's] clothing." *Id.* The police officer was lawfully present in the hospital room, "and he thus had lawful access in the ordinary course of his investigation to the bag of clothing which could be evidence against [the defendant's] assailant." *Id.* at 234, 236–38 (citing *Washington v. Chrisman,* 455 U.S. 1, 8 (1982) ("[W]hen a police officer, for unrelated but entirely legitimate reasons, obtains lawful access to an individual's area of privacy ...[,] the Fourth Amendment does not prohibit seizure of evidence of criminal conduct found in these circumstances.")). The clothing was incriminating evidence of a crime because the clothing could possess blood, trace evidence, and/or a bullet hole. *Id.* at 235. (citing *United States v. Chipps,* 410 F.3d 438, 443 (8th Cir.2005) (warrantless seizure of a sweatshirt on the ground outside a house where there had been a reported assault was justified by the plain view doctrine, since "the incriminating nature of a bloody sweatshirt at the site of a potential assault was obvious" and the officer "had a legal right to access the shirt—it was right in front of him on the ground"); *Chavis v. Wainwright,* 488 F.2d 1077, 1078 (5th Cir.1973) (clothing in plastic hospital bag was properly seized from stabbing victim in hospital without a warrant as evidence of an

6

assault, despite fact that victim told police he did not want to prosecute his assailant girlfriend)).

Similarly here, Corporal Taylor arrived at the hospital in response to a shooting. Corporal Taylor saw Defendant come into the emergency room after having been shot and observed he had a large, bloody gash to the right side of his head. Corporal Taylor was lawfully in the hospital. The nurse brought Defendant's clothes to Corporal Taylor without law enforcement prompting the nurse to do so. Under the Fourth Circuit's precedent in *Davis*, Defendant's clothing was incriminating evidence of a crime because the clothing could possess blood, trace evidence, a bullet hole, or other evidence regarding Defendant's assailant. *See id.* Therefore, the plain view exception applies here. Defendant's motion to suppress the heroin found during the September 12, 2016 search is **DENIED**.[1]

---

[1] In dicta in a footnote, the Fourth Circuit in *Davis* cites favorably to cases in other jurisdictions which hold that hospital patients do not have a reasonable expectation of privacy to their clothing. *See United States v. Davis*, 690 F.3d 226, 238 n.19 (4th Cir. 2012) (citing *Holt v. United States,* 675 A.2d 474, 477, 480 (D.C.1996) (the Fourth Amendment was not violated by the search or the subsequent seizure of defendant's clothing from a "visible, unsealed plastic bag under [defendant's] gurney in which hospital personnel had stored [his] clothing before treating him" after defendant had admitted himself with a gunshot wound, particularly where he had "voluntarily walked into [the hospital] emergency room wearing—for everyone to see—the clothing the police later inspected" and he never expressed "a desire to remove [the clothing] from public view"); *People v. Sutherland,* 415 N.E.2d 1267, 1271 (Ill. App. Ct. 1980) (gunshot victim whose clothes were removed at the hospital had no reasonable expectation of privacy in those clothes and thus they could be obtained and inspected without a warrant); *State v. Adams,* 541 A.2d 262, 265 (N.J. Super. Ct. App. Div. 1988) (exigent circumstances permitted the search and inspection of clothing taken from an unconscious hospital patient in the emergency room, who was believed to be the victim of a shooting); *Wagner v. Hedrick,* 383 S.E.2d 286, 291 (W.Va. 1989) (motorcycle accident victim had no "reasonable expectation of privacy

### b) The June 1, 2017 search of Defendant's home

Next, Defendant would like to suppress statements and physical evidence from the June 1, 2017 search of Defendant's home.

#### 1) Statements

Defendant argues the investigating officers violated his Fifth Amendment rights by not giving him his Miranda warnings.

Miranda warnings are required before law enforcement may properly engage in any custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "Volunteered statements of any kind are not barred by the Fifth Amendment." *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980). Spontaneous utterances are an exception to Miranda's procedural safeguards and need not be suppressed. *United States v. Rhodes*, 779 F.2d 1019, 1032 (4th Cir. 1985) ("*Miranda* does not protect an accused 'from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers.'").

Here, Defendant made statements that the firearms belonged to him but that he did not know about the suspected pills and suspected heroin. The Government does not dispute that Defendant was in custody when he made the statements. Though Defendant was in handcuffs at the time, he has presented no evidence that the statements were in response to questioning or interrogation by the police officers.

---

in his personal effects" under the control of emergency room staff)). However, because I have found that Corporal Taylor could search Defendant's clothing under the plain view exception, I decline to answer the question of whether Defendant Smith had a reasonable expectation of privacy to his clothing by his status as a hospital patient.

In fact, Defendant "made those statements as officers were searching the residence and began discovering firearms within the residence." Tr. Mot. Suppress 22:22–24.

I remain concerned by the fact that Detective Petty stated on the stand that he asked Defendant if he would like to cooperate with Metro Drug Unit and avoid being charged. Detective Petty stated that he also advised Defendant and Ms. Carter that "if they did not contact [him] within a timely manner, [he] would issue a warrant for their arrest." *Id.* at 22:15–17. These statements were made to Defendant without having warned him of his Miranda rights and while he was handcuffed. *See United States v. Foreman*, 993 F. Supp. 186, 192–93 (S.D.N.Y. 1998) ("Officer Heber admits that he asked [Defendant] to cooperate and told him it would help him if he did. I find that by suggesting that Foreman could do better by speaking with the police, Officer Heber engaged in the functional equivalent of interrogation…. Thus any statements by [Defendant] after this point were the product of interrogation and should be suppressed."); *see also United States v. Martin*, 238 F. Supp. 2d 714, 721 (D. Md. 2003). However, here, Defendant has presented no evidence that he made his statements in response to Detective Petty asking him if he would cooperate. Therefore, I find Defendant's statements were spontaneous and not in response to an interrogation. Defendant's motion to suppress his statements is **DENIED**.

### 2) Physical evidence

Next, Defendant argues the physical evidence seized during the June 1, 2017 search of his home should be suppressed because the search was not pursuant to a valid search warrant.

9

"[E]vidence from trash pulls can be used to support a search warrant." *United States v. Lyles*, 910 F.3d 787, 792 (4th Cir. 2018). Additionally, "law enforcement may search trash left at the curb without a search warrant" because people have "no reasonable expectation of privacy in curbside trash." *Id.* However, the Fourth Circuit has held that a single trash pull "revealing evidence of three marijuana stems, three empty packs of rolling papers, and a piece of mail, standing alone" did not justify a search warrant for an adjacent home. *Id.* at 793.

In this case, Detective Petty testified he conducted a trash pull outside of Defendant's fence. In the affidavit for the search warrant, Detective Petty detailed the heroin and marijuana residue discovered from the trash pull. He further detailed the drug trafficking paraphernalia, including plastic bags with corners missing, and explained why missing corners based on his experience is indicative of drug trafficking. He added finding cigar paper, which is commonly used for smoking marijuana, and finding 30 oxycodone pills. Detective Petty also detailed finding mail addressed for the residence. Finally, Detective Petty included information about the prior shooting from September 12, 2016 where Defendant was shot and had 20 bags of distribution amounts of heroin on his person. I find the significant amount of drug evidence pulled from the trash is distinguishable from *Lyles*, *see id.*, and more similar to *Gary*, where the trash pull of plastic bags with heroin residue and foil and baggies with cut corners provided probable cause for a search warrant. *See United States v. Gary*, 528 F.3d 324, 326 (4th Cir. 2008). I find sufficient probable cause existed to

support the search warrant. Defendant's motion to suppress the evidence found during the search of his home is **DENIED**.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion to Suppress [ECF Nos. 83, 123] is **DENIED**. The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: April 28, 2020

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE